1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   JOHN ALVAREZ,                              No.  2:15-cv-00943-TLN-CKD

12              Plaintiff,

13        v.                                    **ORDER GRANTING IN PART AND
                                                DENYING IN PART DEFENDANT WELLS
14   WELLS FARGO BANK, N.A. et al.,             FARGO'S MOTION TO DISMISS**

15              Defendants.

16

17        This matter is before the Court on Defendant Wells Fargo Bank N.A.'s ("Wells Fargo")

18   motion to dismiss.[1]  (ECF No. 9.)  Plaintiff John Alvarez ("Plaintiff") has filed an opposition to

19   _____

20   [1]      In conjunction with Wells Fargo's motion to dismiss, Defendant has requested judicial notice of the
     following documents: Plaintiff's Complaint filed in this Action on April 30, 2015 as Docket No. 1; Grant Deed
     recorded against 7625 Zilli Dr., Tracy, San Joaquin County, California 95304, (the "Property") by the San Joaquin
21   County Recorder on April 23, 2008; Deed of Trust recorded against the Property by the San Joaquin County
     Recorder on April 23, 2008, as Document No. 2008-064537 reflecting Wells Fargo's loan in the original principal
22   amount of $ 446, 500 to Plaintiff; Notice of Default recorded against the Property by the San Joaquin County
     Recorder on January 22, 2010; Rescission of Deed of Trust recorded against the Property by the San Joaquin County
23   Recorder on April 29, 2010; Substitution of Trustee recorded against the Property by the San Joaquin County
     Recorder on July 21, 2010; Deed of Trust recorded against the Property by the San Joaquin County Recorder on June
24   22, 2011, as Document No. 2011-074557 reflecting CalHFA's loan in the original  principal amount of $ 17,193.00;
     Deed of Trust recorded against the Property by the San Joaquin County Recorder on November 1, 2012, as
25   Document No. 2012-143298 reflecting CalHFA's loan in the original amount of $ 8,792; Notice of Default
     recorded against the Property by the San Joaquin County Recorder on November 19, 2013, as Document No. 2013-
26   144208; Reconveyance of CalHFA's Deed of Trust reflecting CalHFA's loan in the original principal amount of
     $17,193.00 recorded on April 18,2014 against the Property by the San Joaquin County Recorder as Document No.
27   2014-038128; Notice of Trustee's Sale recorded against the Property on July 21, 2014, by the San Joaquin County
     Recorder as Document No. 2014-071448; Trustee's Deed Upon Sale recorded against the Property on January 20,
28   2015, by the San Joaquin County Recorder as Document No. 2015-007103; and Grant Deed recorded against the
     Property on February 10, 2015, by the San Joaquin

1   Wells Fargo's motion (ECF No. 15), and Wells Fargo has filed a reply to Plaintiff's opposition

2   (ECF No. 17).  The Court has carefully considered the arguments raised by the parties.  For the

3   reasons set for the below, Wells Fargo's motion to dismiss is GRANTED IN PART and DENIED

4   IN PART.

5       **I.   FACTUAL BACKGROUND**

6           Plaintiff resides at 7625 Zilli Drive Tracy, California 95304, the real property at issue in

7   this matter ("the property").  (Compl., ECF No. 1 at ¶ 1.)  On or about April 14, 2008, Plaintiff

8   executed a Deed of Trust, recorded in the Official Records, San Joaquin County on April 23,

9   2008, as Document No. 2008-064538 ("the subject Deed of Trust") whereby Plaintiff borrowed

10  funds from Wells Fargo which provided a lien upon the property.  (ECF No. 1 at ¶ 7.)  In March

11  2008, Plaintiff applied for a loan modification.  (ECF No. 1 at ¶ 8.)  Wells Fargo approved a loan

12  modification application in early 2010.  (ECF No. 1 at ¶ 8.)  Plaintiff executed a mortgage loan

13  modification agreement on April 8, 2010, and sent the agreement to Wells Fargo.  (ECF No. 1 at

14  ¶ 8.)  Plaintiff states that he received confirmation that Defendant Wells Fargo received the

15  signed agreement from Plaintiff, that Wells Fargo signed the agreement, and sent a copy to

16  Plaintiff.  (ECF No. 1 at ¶ 8.)

17          The mortgage loan modification agreement required that Plaintiff make mortgage

18  payments in the sum of $ 3,016.85 including taxes and insurance.  (ECF No. 1 at ¶ 8.)  However,

19  in May 2010, Wells Fargo notified Plaintiff that his mortgage loan modification was cancelled

20  because Wells Fargo believed that Plaintiff had not returned the signed mortgage agreement.

21  (ECF No. 1 at ¶ 8.)  Plaintiff continued to make mortgage payments in the sum of $ 3,016.85 to

22  Wells Fargo on May 15, 2014, and again on June 29, 2014.  (ECF No. 1 at ¶ 8.)  Wells Fargo then

23

24  County Recorder as Document No. 2015-0148277.  (ECF No. 10.)
            Judicial notice is appropriate under Federal Rule of Evidence 201 when facts are "not subject to reasonable

25  dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of
    accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R.

26  Evid. 201(b). The documents attached hereto are "not subject to reasonable dispute" and are "capable of accurate and
    ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.

27  Deeds of Trust and similarly recorded public documents are widely held as proper subjects of judicial notice.  *See,*
    *e.g., In the Matter of Manges*, 29 F.3d 1034, 1042 (5th Cir. 1994) (taking judicial notice of deeds and assignments).
    As such, the Court GRANTS Wells Fargo's request for judicial notice (ECF No. 10) of the aforementioned

28  documents.

1   sent a new mortgage loan modification agreement to Plaintiff threatening to foreclose on

2   Plaintiffs home if he did not begin to make payments in the sum of $2,865.00.  (ECF No. 1 at ¶

3   8.)  Plaintiff alleges that he did not sign the new mortgage Loan Modification Agreement, but he

4   began making payments to Wells Fargo in the sum of $ 2,865.00 in approximately September

5   2010 and continued to do so until approximately September 2011.  (ECF No. 1 at ¶ 8.)

6        In September 2011, Plaintiff lost his job and was no longer able to make his mortgage

7   payments.  (ECF No. 1 at ¶ 9.)  Plaintiff applied for assistance from Keep Your Home California

8   which paid six mortgage payments for Plaintiff in 2011 and 2012.  (ECF No. 1 at ¶ 9.)   When

9   Plaintiff obtained employment in October 2013, he applied for assistance from Keep Your Home

10   California's Mortgage Repayment Assistance Program ("MRAP").  (ECF No. 1 at ¶ 10.)

11   Plaintiff asserts that "when an applicant receives approval from the MRAP program for payment

12   of moneys to be applied against the arrears of an applicant's mortgage loan, a participating lender

13   must accept the payment from Keep Your Home California," and that "[a]t all times Wells Fargo

14   was and is a participating lender in the Keep Your Home California['s] MRAP program."  (ECF

15   No. 1 at ¶ 10.)

16        Plaintiff alleges that in March 2014 he attended a workshop sponsored by Wells Fargo for

17   homeowners needing assistance in modifying their mortgages.  (ECF No. 1 at ¶ 11.)  At the

18   workshop, Wells Fargo employees informed Plaintiff that he would be able to submit a mortgage

19   loan modification application with supporting documents that would include participation by

20   Keep Your Home California.  (ECF No. 1 at ¶ 11.)  Plaintiff met with three different Wells Fargo

21   employees as well as Drew Peterson, manager of Wells Fargo's mortgage loan underwriters, who

22   all reviewed Plaintiff's application and supporting documents.  (ECF No. 1 at ¶ 11.)  After the

23   review had been completed, Plaintiff was informed that his mortgage loan modification

24   application, with supporting documentation, was complete and that Plaintiff would receive a

25   decision on his mortgage loan modification application as soon as a file for Plaintiffs participation

26   in Keep Your Home California was opened and reviewed.  (ECF No. 1 at ¶ 11.)  However, within

27   three days, Wells Fargo contacted Plaintiff and stated that it would not consider Plaintiff's

28   participation in Keep Your Home California and that additional documents were necessary for

Plaintiff's mortgage loan modification application.  (ECF No. 1 at ¶ 11.)  Plaintiff questioned the authority for the request for additional documents and thereafter, Plaintiff's mortgage loan modification application was cancelled.  (ECF No. 1 at ¶ 11.)  Wells Fargo stated in a May 19, 2014, letter to Plaintiff that the reason for cancellation of his mortgage loan modification application was that he had failed to submit necessary documentation.  (ECF No. 1 at ¶ 11.)  Plaintiff asserts that this claim is bogus in light of the fact that Drew Peterson, the manager of Wells Fargo's mortgage loan underwriters, and other Wells Fargo employees had previously reviewed his application in detail and had confirmed that Plaintiff's mortgage loan modification application, with supporting documentation, was complete.  (ECF No. 1 at ¶ 11.)

Plaintiff alleges that he continued to seek modification of his mortgage loan and that Wells Fargo continued to pursue foreclosure of Plaintiffs residence.  (ECF No. 1 at ¶ 12.)  Plaintiff repeatedly questioned Wells Fargo's refusal to consider participation by Keep Your Home California for Plaintiff's mortgage loan modification, and Wells Fargo provided various responses which Plaintiff asserts were ultimately proved to be false.  (ECF No. 1 at ¶ 12.)  For example, Wells Fargo repeatedly told Plaintiff that "the investor on Plaintiff's loan was the Veteran's Administration and that the Veteran's Administration would not allow participation [by] Keep Your Home California in a loan modification, however, [Plaintiff alleges that] Plaintiff's loan is a bank funded loan and the Veteran's Administration is an insurer of Plaintiff's loan, and the Veteran's Administration guidelines do not prevent it from participating by Keep Your Home California (HARDEST HIT FUNDS) in a loan modification."  (ECF No. 1 at ¶ 12.)

Plaintiff avers that Wells Fargo:

> refused to implement procedures as required by 38 U.S.C. §3700 et seq and regulations promulgated thereunder, which require lenders to take all reasonable and necessary steps to prevent defaults by veterans such as Plaintiff on their home loans which are insured by the Veterans Administration, by refusing to modify Plaintiffs mortgage loan, by refusing to allow Plaintiff to receive benefits which were approved by Keep Your Home California (HARDEST HIT FUNDS) and by repeatedly breaching its promises to modify Plaintiffs mortgage loan.

(ECF No. 1 at ¶ 12.)   Plaintiff asserts that Wells Fargo's refusal to allow Plaintiff to receive benefits from Keep Your Home California also violated the Emergency Economic Stabilization

4

1  Act, 12 U.S.C. §§ 5201–5261, and that Wells Fargo's refusal to provide mortgage assistance

2  violates the Home Affordable Modification Program (HAMP) and Home Affordable Refinance

3  Program (HARP) programs.  (ECF No. 1 at ¶ 12.)

4        On September 16, 2014, and October 6, 2014, Wells Fargo sent Plaintiff mailings which

5  contained a loan modification agreement (Deed of Trust) with accompanying letters via FedEx

6  overnight delivery.  (ECF No. 1 at ¶ 13.)  Plaintiff asserts that the September, 2014 mailing was

7  not delivered to Plaintiff, and instead was delivered to an absentee neighbor's residence, who

8  delivered the mailing to Plaintiff in November, 2014.  (ECF No. 1 at ¶ 13.)  The October 6, 2014,

9  mailing contained a letter dated August 13, 2014, advising Plaintiff that in order to complete his

10  mortgage loan modification, he was required to return the signed loan modification agreement to

11  Wells Fargo within fifteen days of August 13, 2014, or Wells Fargo would cancel the Loan

12  Modification Agreement.  (ECF No. 1 at ¶ 13.)  Plaintiff asserts that neither the September 16,

13  2014, mailing nor the October 6, 2014, mailing made any reference to participation by Keep Your

14  Home California and the payment by that program of $25,000 toward Plaintiffs mortgage arrears.

15  (ECF No. 1 at ¶ 13.)  Plaintiff alleges that he was prevented from responding to the September

16  16, 2014, and October 6, 2014, mailings because he did not receive either of those mailings until

17  long after the deadline for return of the signed loan modification agreement had passed.  (ECF

18  No. 1 at ¶ 13.)

19        In early December 2014, Wells Fargo's Home Preservation Specialist, Brian Kent,

20  requested that Plaintiff submit another mortgage loan modification application.  (ECF No. 1 at ¶

21  14.)  On December 5, 2014, Plaintiff submitted yet another completed mortgage loan

22  modification application with supporting documents via facsimile transmission and via email.

23  (ECF No. 1 at ¶ 14.)  Shortly thereafter, Brian Kent contacted Plaintiff by telephone and told

24  Plaintiff that Wells Fargo would not consider Plaintiff's mortgage loan modification application

25  because Plaintiff had not signed the documents that were sent to him in the September and

26  October mailings.  (ECF No. 1 at ¶ 14.)  Plaintiff alleges that Wells Fargo did not provide any

27  written explanation for refusing to consider the mortgage loan modification application which it

28  requested that he send, in violation of the provisions of the California Homeowners Bill of Rights,

1   including but not limited to Civil Code Section 2923.6 (f).  (ECF No. 1 at ¶ 14.)  Plaintiff further

2   alleges that Wells Fargo failed to advise Plaintiff of his right to appeal the termination of his

3   mortgage loan modification application, in violation of the provisions of the California

4   Homeowners Bill of Rights, including but not limited to Civil Code Section 2923.6 (d).  (ECF

5   No. 1 at ¶ 14.)

6        On January 8, 2015, Defendant Quality Loan Service Corporation ("QLSC") conducted a

7   Trustee's Sale of the subject property at 10:00 a.m. at the courthouse steps, San Joaquin County

8   Superior Court, 222 E. Weber Ave., Stockton, CA 95202.  (ECF No. 1 at ¶ 15.)  Wells Fargo took

9   title to the subject property pursuant to a Trustee's Deed executed by Defendant QLSC on

10  January 15, 2015, which Trustee's Deed Upon Sale was recorded in the Official Records, San

11  Joaquin County on January 20, 2015, as Document no. 2015-007103 ("the subject Trustee's

12  Deed").  (ECF No. 1 at ¶ 15.)

13       On March 6, 2015, Defendant Vendor Resource Management ("VRM") filed an Unlawful

14  Detainer case, San Joaquin County case no. 39-2015-00322601-CL-UD-MAN ("the Unlawful

15  Detainer case") against Plaintiff, alleging that: the Secretary of Veteran's Affairs had taken title to

16  the subject property from Wells Fargo; VRM was acting as agent for the Secretary of Veteran's

17  Affairs; Plaintiff was guilty of unlawful detainer by his continued possession of the  subject

18  property; and praying for possession of the subject property.  (ECF No. 1 at ¶ 17.)

19       Plaintiff asserts that neither Wells Fargo nor the Secretary of Veteran's Affairs is legally

20  entitled to possession of the subject property due to numerous breaches of law, breaches of

21  agreements, and failures to follow the California Homeowner's Bill of Rights by Wells Fargo and

22  QLSC.  (ECF No. 1 at ¶ 15.)  Plaintiff filed the instant action on April 30, 2015.  (ECF No. 1.)

23       **II.   LEGAL STANDARD**

24       Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain

25  statement of the claim showing that the pleader is entitled to relief."  *See Ashcroft v. Iqbal*, 556

26  U.S. 662, 678–79 (2009).  Under notice pleading in federal court, the complaint must "give the

27  defendant fair notice of what the claim . . . is and the grounds upon which it rests."  *Bell Atlantic*

28  *v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted).  "This simplified notice

1   pleading standard relies on liberal discovery rules and summary judgment motions to define

2   disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*,

3   534 U.S. 506, 512 (2002).

4       On a motion to dismiss, the factual allegations of the complaint must be accepted as true.

5   *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court is bound to give plaintiff the benefit of every

6   reasonable inference to be drawn from the "well-plead" allegations of the complaint. *Retail*

7   *Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege

8   "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to

9   relief." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads

10  factual content that allows the court to draw the reasonable inference that the defendant is liable

11  for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. 544, 556 (2007)).

12      Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of

13  factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir.

14  1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an

15  unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A

16  pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

17  elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678

18  ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

19  statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove

20  facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not

21  been alleged[.]" *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,

22  459 U.S. 519, 526 (1983).

23      Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough

24  facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting

25  *Twombly*, 550 U.S. at 570). Only where a plaintiff fails to "nudge[] [his or her] claims . . . across

26  the line from conceivable to plausible[,]" is the complaint properly dismissed. *Id.* at 680. While

27  the plausibility requirement is not akin to a probability requirement, it demands more than "a

28  sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a

1  context-specific task that requires the reviewing court to draw on its judicial experience and

2  common sense." *Id.* at 679.

3      In ruling upon a motion to dismiss, the court may consider only the complaint, any

4  exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of

5  Evidence 201.  *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu*

6  *Motors Ltd. v. Consumers Union of United States, Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal.

7  1998).

8      If a complaint fails to state a plausible claim, "'[a] district court should grant leave to

9  amend even if no request to amend the pleading was made, unless it determines that the pleading

10  could not possibly be cured by the allegation of other facts.'"  *Lopez v. Smith*, 203 F.3d 1122,

11  1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995));

12  *see also Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in

13  denying leave to amend when amendment would be futile).  Although a district court should

14  freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to

15  deny such leave is 'particularly broad' where the plaintiff has previously amended its

16  complaint[.]"  *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir.

17  2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

18      **III.  ANALYSIS**

19      Plaintiff's Complaint alleges the following causes of action: wrongful foreclosure;

20  declaratory relief; and cancellation of trustee's deed and subsequent transfer.  (ECF No. 1.)  Wells

21  Fargo moves to dismiss all three claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

22  (ECF No. 9.)  The Court addresses each cause of action below.  Because the Court finds that

23  resolution of Plaintiff's Second Cause of Action for declaratory relief is affected by whether

24  Plaintiff has recourse under his other causes of action, the Court addresses Plaintiff's Second

25  Cause of Action after discussing the First and Third.

26      A.  Wrongful Foreclosure (Count I)

27      Defendant moves for dismissal on numerous grounds.  First Wells Fargo argues that

28  Plaintiff's HBOR claims fail as a matter of law because HBOR went into effect on January 1,

1   2013, and that Plaintiff does not allege that he submitted a complete loan modification after that

2   date.  (ECF No. 9 at 5.)  This contention is without merit because Plaintiff clearly states in his

3   Complaint that he completed and submitted an application in March 2014 (ECF No. 9 at ¶ 11),

4   and that "[o]n December 5, 2014, Plaintiff submitted another complete mortgage loan

5   modification application with supporting documents."  (ECF No. 1 at ¶ 14.)  Wells Fargo seems

6   to assert that the March 2014 application does not apply because of Plaintiff's failure to return

7   signed documents that were sent to him during the Fall of 2014 and that Plaintiff's December

8   2015 modification application was not complete.  (ECF No. 9 at 5.)  These arguments are

9   unavailing.  First, Wells Fargo has not provided this Court with any case law that supports its

10  inference that one missing signature makes an otherwise complete application incomplete.

11  Moreover, the fact that Plaintiff did not timely sign documents that were sent to Plaintiff in the

12  Fall of 2014 has no bearing on the December 2015 completed application.  Since the Court has

13  determined that the HBOR does in fact govern this matter, it now turns to the specific provision

14  of the HBOR to which Plaintiff alleges violations have occurred.

15          *1. Sections 2923.5 and 2923.55*

16          Wells Fargo argues that Plaintiff has failed to allege facts that would support Plaintiff's

17  allegation that Wells Fargo violated Civil Code § 2923.5.  (ECF No. 9 at 6.)   Plaintiff asserts in

18  his opposition, that his allegations of violations of this code are based on Wells Fargo failing to

19  adhere to the due diligence requirements under section (e).  (ECF No. 15 at 8.)  The applicable

20  part of section 2923.5 states as follows:

21              A mortgage servicer, mortgagee, trustee, beneficiary, or authorized
            agent may not record a notice of default pursuant to Section 2924
22              until both of the following:

23              (A) Either 30 days after initial contact is made as required by
            paragraph (2) or 30 days after satisfying the due diligence
24              requirements as described in subdivision (e).

25              (B) The mortgage servicer complies with paragraph (1) of
            subdivision (a) of Section 2924.18, if the borrower has provided a
26              complete application as defined in subdivision (d) of Section
            2924.18
27
                . . .
28

9

(e) A notice of default may be recorded pursuant to Section 2924 when a mortgage servicer has not contacted a borrower as required by paragraph (2) of subdivision (a) provided that the failure to contact the borrower occurred despite the due diligence of the mortgage servicer. For purposes of this section, "due diligence" shall require and mean all of the following:

(1) A mortgage servicer shall first attempt to contact a borrower by sending a first-class letter that includes the toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency.

(2)(A) After the letter has been sent, the mortgage servicer shall attempt to contact the borrower by telephone at least three times at different hours and on different days. Telephone calls shall be made to the primary telephone number on file.

(B) A mortgage servicer may attempt to contact a borrower using an automated system to dial borrowers, provided that, if the telephone call is answered, the call is connected to a live representative of the mortgage servicer.

(C) A mortgage servicer satisfies the telephone contact requirements of this paragraph if it determines, after attempting contact pursuant to this paragraph, that the borrower's primary telephone number and secondary telephone number or numbers on file, if any, have been disconnected.

(3) If the borrower does not respond within two weeks after the telephone call requirements of paragraph (2) have been satisfied, the mortgage servicer shall then send a certified letter, with return receipt requested.

(4) The mortgage servicer shall provide a means for the borrower to contact it in a timely manner, including a toll-free telephone number that will provide access to a live representative during business hours.

(5) The mortgage servicer has posted a prominent link on the homepage of its Internet Web site, if any, to the following information:

(A) Options that may be available to borrowers who are unable to afford their mortgage payments and who wish to avoid foreclosure, and instructions to borrowers advising them on steps to take to explore those options.

(B) A list of financial documents borrowers should collect and be prepared to present to the mortgage servicer when discussing options for avoiding foreclosure.

(C) A toll-free telephone number for borrowers who wish to discuss options for avoiding foreclosure with their mortgage servicer.

(D) The toll-free telephone number made available by HUD to find

10

a HUD-certified housing counseling agency.

Plaintiff asserts that he intends to "propound discovery as to Defendant's actions to comply with due diligence provisions" within section (e).  (ECF No. 15 at 8.)  In response, Wells Fargo asserts that Plaintiff has failed to allege any facts within the Complaint to support this allegation.  (ECF No. 17 at 2.)  This Court agrees.  Moreover, Plaintiff's claims under sections 2923.5 and 2923.55 both fail because there is no remedy available to Plaintiff.

California courts have held that the only remedy for HBOR notice requirement statutes is postponement of the foreclosure sale.  *See Skov v. U.S. Bank Nat. Assn.*, 207 Cal. App. 4th 690, 696 (2012) ("The only remedy for noncompliance with the statute is the postponement of the foreclosure sale."); *Mabry v. Superior Court*, 185 Cal. App. 4th 208, 214 (2010) ("To repeat: The right of action is limited to obtaining a postponement of an impending foreclosure to permit the lender to comply with section 2923.5."); *see also W. v. JPMorgan Chase Bank, N.A.*, 214 Cal. App. 4th 780, 800 (2013) ("After a nonjudicial foreclosure sale has been completed, the traditional method by which the sale is challenged is a suit in equity to set aside the trustee's sale.") (internal quotations omitted); *Newman v. Bank of New York Mellon*, No. 1:12-CV-1629 AWI, 2013 WL 5603316, at *11 (E.D. Cal. Oct. 11, 2013) ("There is no remedy for a violation of § 2923.5 if the foreclosure sale has already occurred.").  Therefore, since the foreclosure sale has already occurred, the Court finds Plaintiff has no remedy under § 2923.5.

Moreover, the facts here show that Plaintiff had notice of the foreclosure, i.e. Plaintiff submitted numerous applications for modification, and spoke with Wells Fargo employees, such as Brian Kent, concerning the fact that his applications for modification were being denied.  Thus, the Court finds that the Complaint demonstrates sufficient compliance with the notice requirements of sections 2923.5 and 2923.55.  *See Newman*, 2013 WL 5603316, at *12 ("The Court is aware of no requirement that the negotiations or discussions result in a particular outcome.  Because Newman's declaration demonstrates that he submitted at least three applications for a loan modification and communicated with BOA about these applications, all during a time in which he was in default, the FAC demonstrates sufficient compliance with §

1   2923.5.5.").  Thus, Plaintifff has failed to state a claim under sections 2923.5 and 2923.55.

2                    *2.  Sections 2923.6 and 2924.18*

3          Wells Fargo next argues that Plaintiff's allegations concerning §§ 2923.6 and 2924.18 are

4   fatally defective.  (ECF No. 9 at 6.)  Both sections govern the responsibilities of a lender to a

5   borrower that has submitted a complete application for modification.  *See* Cal Civ Code §§

6   2923.6; 2924.11.  Again, Wells Fargo's argument for dismissal is based on the assumption that

7   Plaintiff failed to submit a complete modification application:

8              Civil Code section 2923.6 gives a list of actions which are restricted
9              "[i]f a borrower submits a complete application for a first lien loan
               modification."  Civ. Code § 2923.6(c).  Under the statute, when a
10             complete loan application has been submitted by a borrower, a
               servicer may not record a notice of default, notice of trustee's sale,
               or conduct a trustee's sale until a written determination is made to
11             the borrower's eligibility. Civ. Code § 2923.6(c). . . . Plaintiff here
               fails to plead that he submitted a "complete" loan modification
12             application to Wells Fargo at any time.

13   (ECF No. 9 at 7.)

14          Plaintiff argues that the application that he submitted in the March 2014 workshop was

15   not adequately assessed and that the subsequent foreclosure actions were in violation of §2923.6.

16   Specifically, Plaintiff asserts that Wells Fargo did not make a true assessment of the viability of

17   his application and instead falsely claimed that its investor on Plaintiff's loan would not allow

18   participation by Keep Your Home California.  (ECF No. 15 at 4.)

19          At this juncture, the Court cannot determine whether Plaintiff's application was denied

20   under false pretenses and must take the allegations set forth as true for determining this motion.

21   Thus, the Court finds that Plaintiff has stated a claim for foreclosure under § 2923.6.

22   Furthermore, as the Court referenced above, Plaintiff alleges that he submitted a complete

23   mortgage loan application in December 2015.  Assuming Plaintiff's application was in fact

24   complete, Plaintiff has alleged that Wells Fargo violated § 2923.6 by failing to make a "written

25   determination that [Plaintiff] is not eligible for a first lien loan modification."  Cal. Civ. Code §

26   2923.6(c)(1).  Such a failure is in direct contravention to the statute.  Accordingly, the Court finds

27   that Plaintiff has alleged a claim pursuant to § 2923.6.

28   //

                                            12

1          *3.   Section 2924.11*

2          Wells Fargo argues that Plaintiff has failed to assert a violation under California Civil

3   Code § 2924.11.  (ECF No. 9 at 7.)  In his opposition, Plaintiff agrees and states that "the

4   Complaint does not allege any violations of Civil Code section 2924.11."  (ECF No. 15 at 8.)

5   Thus, it is undisputed that Plaintiff has not alleged facts to support a violation of § 2924.11, and

6   the Court need not address this matter.

7          *4.   Standing under HAMP*

8          Wells Fargo argues that to the extent that Plaintiff's first claim for relief alleges a

9   Violation of the Home Affordable Modification Program ("HAMP"), this claim fails as a matter

10  of law because Plaintiff does not have standing to enforce HAMP.  (ECF No. 9 at 8.)  In his

11  opposition, Plaintiff states that he is not seeking to enforce HAMP.  As such, the Court need not

12  address this matter.

13         B.   Cancellation of Trustee's Deed and Subsequent Transfer (Count III)

14         Wells Fargo moves for dismissal of Plaintiff's Third Cause of Action for cancellation of

15  trustee's deed and subsequent transfer on the basis that Plaintiff cannot tender the amount due on

16  the loan of the property (ECF No. 9 at 12), that Wells Fargo is a bonda fide buyer, and pursuant to

17  California law because the nonjudicial foreclosure sale was properly conducted, it constitutes a

18  final adjudication of Plaintiff's rights (ECF No. 9 at 11).  In response, Plaintiff asserts that he has

19  adequately alleged HBOR violations, specifically the fact that Wells Fargo twice refused to

20  review completed loan modification applications and thus lacked the legal authority to conduct

21  the Trustee's Sale.  (ECF No. 15 at 11.)  In support, Plaintiff cites *Aplanalp v. Forte*, 225 Cal.

22  App. 3d 609, 613 (1990), for the proposition that a foreclosure sale should be reversed where the

23  creditor lacked authority to foreclose.  (ECF No. 15 at 11.)

24         In *Aplanalp*, the loan for the property had been set off by a judgment against the lender or

25  defendants' note and thus was deemed satisfied.  *Id.* at 612.  Eight days later, in the nonjudicial

26  foreclosure proceedings, the trustee under the note and deed of trust held a trustee's sale of the

27  property where the defendants entered a credit bid of $ 694,849.  *Id.*  The trustee conveyed title of

28  the property to defendants and recorded a trustee's deed upon sale.  *Id.*  The court applied the

13

1  "One-action" Rule and held that the foreclosure could not stand: "Plaintiffs assert that once

2  defendants set off the judgment against the note, section 726 extinguished plaintiffs' further

3  obligations under the note.  Section 726, subdivision (a) provides: 'There can be but one form of

4  action for the recovery of any debt ... secured by a mortgage upon real property ..., which action

5  shall be in accordance with the provisions of this chapter ....'"  *Id.* at 613 (citing Cal. Civ. Proc.

6  Code § 726 (West)).  The facts in *Aplanalp* differ greatly from those in the instant action.

7       Here, Plaintiff has not in any way satisfied the debt under the loan, not through payment

8  or some sort of judicial mechanism.  Thus, the "One-action Rule" does not apply.  A challenge to

9  the validity of the trustee's sale is an attempt to have the sale set aside and to have the title

10  restored.  The action is in equity, and a party seeking to set the sale aside is required to do equity

11  before the court will exercise its equitable powers.  *See Lona v. Citibank, N.A.*, 202 Cal. App. 4th

12  89, 112 (2011); *Abdallah v. United Savings Bank*, 43 Cal. App. 4th 1101, 1109 (1996); *Onofrio v.*

13  *Rice*, 55 Cal. App. 4th 413, 424 (1997); *MCA, Inc. v. Universal Diversified Enterprises Corp*., 27

14  Cal. App. 3d 170, 177 (1972).  "[I]n an action for rescission or cancellation of instruments, a

15  complainant is required to do equity 'by restoring to the defendant any value the plaintiff received

16  from the transaction.'"  *Andrade v. Wachovia Mortgage, FSB*, No. 09-CV-0377 JM (WMC),

17  2009 WL 1111182, at *4 (S.D. Cal. Apr. 21, 2009) (quoting *Fleming v. Kagan*, 189 Cal. App. 2d

18  791, 796–97 (1961)).  Therefore, a condition precedent to an action by the trustor to set aside the

19  trustee's sale on grounds that the sale is voidable, is a payment or offer to pay the secured debt, or

20  at least all of the delinquencies and costs due for redemption before an action is commenced. *See*

21  *Lona*, 202 Cal. App. 4th at 112.  This includes an action by the trustor to quiet title against the

22  lender or other purchaser in foreclosure.  *Id.*  Plaintiff has not fulfilled this requirement and thus,

23  cannot proceed on his motion for cancellation of trustee's deed and subsequent transfer.  As such,

24  Wells Fargo's motion to dismiss Plaintiff's Third Cause of Action is granted.

25       C.  Declaratory Relief (Count II)

26       Wells Fargo moves for dismissal of Plaintiff's claim for declaratory relief on the basis that

27  declaratory relief is a procedural device for granting a remedy and does not create any substantive

28  rights or causes of action.  (ECF No. 9 at 10.)  Wells Fargo also asserts that this claim in not

1    proper as it is duplicative of Plaintiff's other causes, and in the event Plaintiff seeks to have his

2    claim for declaratory relief construed as a motion for quiet title, it fails because Plaintiff has not

3    tendered the amount due under the loan.  (ECF No. 9 at 10.)

4         In response, Plaintiff states only that "the purpose of a declaratory judgment action is to

5    settle important questions of law before the controversy has reached a more critical stage. One

6    commentator has observed that the declaratory judgment action recognizes that courts should

7    operate as preventive clinics as well as hospitals for the injured."  (ECF No. 15 at 10.)

8         The Court finds Wells Fargo's argument as well as the case law cited in support thereof

9    persuasive.  "A claim for declaratory relief is unnecessary where an adequate remedy exists under

10   some other cause of action."  *Mangindin v. Washington Mut. Bank*, 637 F. Supp. 2d 700, 707

11   (N.D. Cal. 2009); *see also Stream Cast Networks, Inc. v. IBIS LLC*, No. CV05-04239MMM

12   (EX), 2006 WL 5720345, at *5 (C.D. Cal. May 2, 2006) (denying a motion to dismiss where the

13   court determined that the claim for declaratory relief was not redundant of Plaintiff's other claim).

14   Here, Plaintiff's argument for declaratory relief is predicated on his claim for wrongful

15   foreclosure and cancellation of trustee's deed and subsequent transfer.  Therefore, because an

16   adequate remedy exists under Plaintiff's First Cause of Action for wrongful foreclosure, Wells

17   Fargo's motion to dismiss Plaintiff's Second Cause of Action for declaratory relief is granted.

18       **IV.    CONCLUSION**

19       For the foregoing reasons, Wells Fargo's motion to dismiss (ECF No. 9) is GRANTED IN

20   PART and DENIED IN PART.  Wells Fargo's motion to dismiss Plaintiff's First Cause of Action

21   as to Plaintiff's claims for violations of sections 2923.5, 2923.55, 2924.11 and HAMP is

22   GRANTED.  Wells Fargo's motion to dismiss Plaintiff's First Cause of Action as to Plaintiff's

23   claims for violations of sections 2923.6 and 2924.18 is DENIED.  Wells Fargo's motion to

24   dismiss Plaintiff's Second and Third Causes of Action are GRANTED.

25       IT IS SO ORDERED.

26   Dated: March 22, 2016

27                                                    Troy L. Nunley
                                                     United States District Judge
28

15