# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN ALVAREZ,<br><br>    Plaintiff,<br><br>    v.<br><br>WELLS FARGO BANK, N.A.,<br><br>    Defendant. | No. 2:15-cv-00943-TLN-DB<br><br>**ORDER** |

Presently before the Court is Plaintiff's Motion for Temporary Restraining Order ("TRO"), filed September 24, 2019. (ECF No. 60.) Defendant Wells Fargo Bank, N.A. ("Wells Fargo") filed an opposition on September 26, 2019. (*See* ECF No. 60-1.) For the reasons set forth below, Plaintiff's Motion is GRANTED.

### I.    Factual and Procedural Background

Plaintiff filed the underlying complaint in this action on April 30, 2015, seeking injunctive relief, declaratory relief, and damages, all arising from the allegedly wrongful foreclosure of Plaintiff's residence. (ECF No. 1.) According to the Complaint, Plaintiff resides at 7625 Zilli Drive Tracy, California 95304, the real property at issue in this matter ("the Property"). (ECF No. 1 at ¶ 1.) On April 14, 2008, Plaintiff executed a Deed of Trust whereby Plaintiff obtained a mortgage loan through Wells Fargo. (ECF No. 1 at ¶ 7.) In March 2010, Plaintiff applied for and obtained a loan modification. (ECF No. 1 at ¶ 8.) Plaintiff claims he executed the loan

1

modification agreement on April 8, 2010, and sent the agreement to Wells Fargo. (ECF No. 1 at ¶ 8.) Plaintiff further states that he received confirmation that Wells Fargo received the signed agreement from Plaintiff, that Wells Fargo signed the agreement and sent a copy back to Plaintiff. (ECF No. 1 at ¶ 8.) In May 2010, however, Plaintiff received notice from Wells Fargo that his loan modification was cancelled because Wells Fargo believed he never returned the signed modification agreement. (ECF No. 1 at ¶ 8.)

In September 2011, Plaintiff lost his job and was no longer able to make his mortgage payments. (ECF No. 1 at ¶ 9.) Plaintiff applied for assistance from Keep Your Home California ("KYHC") which paid six mortgage payments for Plaintiff in 2011 and 2012. (ECF No. 1 at ¶ 9.) When Plaintiff obtained employment in October 2013, he applied for assistance from KYHC's Mortgage Repayment Assistance Program ("MRAP"). (ECF No. 1 at ¶ 10.)

Wells Fargo asserts, and Plaintiff does not deny, that Wells Fargo offered another load modification in June 2012, but Plaintiff rejected the terms thereof. (ECF No. 46-1 at 4.)

Plaintiff alleges that in March 2014, he attended a workshop sponsored by Wells Fargo for homeowners needing assistance in modifying their mortgages. (ECF No. 1 at ¶ 11.) At the workshop, Wells Fargo employees informed Plaintiff that he would be able to submit a mortgage loan modification application with supporting documents that would include participation by KYHC. (ECF No. 1 at ¶ 11.) Plaintiff alleges he met with three Wells Fargo employees who reviewed Plaintiff's application and supporting documents, and informed Plaintiff that his loan modification application was complete, and Plaintiff would receive a decision on the application as soon as a file for Plaintiff's participation in KYHC was opened and reviewed. (ECF No. 1 at ¶ 11.) However, within three days, Wells Fargo contacted Plaintiff and stated it would not consider Plaintiff's participation in KYHC and that additional documents were necessary for Plaintiff's loan modification application. (ECF No. 1 at ¶ 11.) Plaintiff questioned the need for additional documents and apparently never submitted anything further. In May 2014, Plaintiff's loan modification application was denied. (ECF No. 1 at ¶ 11.) Wells Fargo's denial letter provided the reason for cancellation of his loan modification application was that he had failed to submit necessary documentation. (ECF No. 1 at ¶ 11.)

| | |
|---|---|
| 1 | Plaintiff does not dispute that he submitted another request for mortgage assistance on |
| 2 | July 28, 2015. (ECF No. 50 at 5.) On September 16, 2014, and October 6, 2014, Wells Fargo |
| 3 | sent Plaintiff mailings which contained a loan modification agreement (Deed of Trust) with |
| 4 | accompanying letters via FedEx overnight delivery. (ECF No. 1 at ¶ 13.) Plaintiff asserts that the |
| 5 | September 2014 mailing was not delivered to Plaintiff, and instead was delivered to an absentee |
| 6 | neighbor's residence, who delivered the mailing to Plaintiff in November 2014. (ECF No. 1 at ¶ |
| 7 | 13.) The October 6, 2014, mailing contained a letter dated August 13, 2014, advising Plaintiff |
| 8 | that in order to complete his loan modification, he was required to return the signed loan |
| 9 | modification agreement to Wells Fargo within fifteen days of August 13, 2014, or Wells Fargo |
| 10 | would cancel the agreement. (ECF No. 1 at ¶ 13.) Plaintiff alleges that he was prevented from |
| 11 | responding to the August mailing because he did not receive it until after the deadline for return |
| 12 | of the signed loan modification agreement had passed. (ECF No. 1 at ¶ 13.) Wells Fargo counters |
| 13 | that Plaintiff told a Wells Fargo employee on a telephone call in October 2014 that he received |
| 14 | the agreement and did not know when he would send the documents back. (ECF No. 50 at 7.) |
| 15 | The loan modification was cancelled in November of that year because Plaintiff did not return the |
| 16 | signed agreement. (ECF No. 50 at 7.) |
| 17 | Plaintiff alleges that in early December 2014, Wells Fargo's Home Preservation |
| 18 | Specialist, Brian Kent, requested that Plaintiff submit another mortgage loan modification |
| 19 | application. (ECF No. 1 at ¶ 14.) On December 5, 2014, Plaintiff submitted yet another completed |
| 20 | mortgage loan modification application with supporting documents via facsimile transmission |
| 21 | and via email. (ECF No. 1 at ¶ 14.) Shortly thereafter, Brian Kent contacted Plaintiff by telephone |
| 22 | and told Plaintiff that Wells Fargo would not consider Plaintiff's mortgage loan modification |
| 23 | application because Plaintiff had not signed the documents that were sent to him in the September |
| 24 | and October mailings. (ECF No. 1 at ¶ 14.) Plaintiff alleges in his complaint that Wells Fargo did |
| 25 | not provide any written explanation for refusing to consider the loan modification application |
| 26 | (ECF No. 1 at ¶ 14), but then asserts in the present TRO that Wells Fargo did in fact respond in |
| 27 | writing on December 10, but that response was insufficient under the Homeowner Bill of Rights. |
| 28 | (ECF No. 61 at 2-3.) More specifically, Plaintiff contends Wells Fargo failed to identify the |

3

purportedly missing documents, failed to advise Plaintiff of his right to appeal the denial, and failed to advise Plaintiff of a timeline for submission of additional documentation, all in violation of the Homeowner Bill of Rights. (ECF No. 1 at ¶ 14; ECF No. 61 at 2-3.) The parties dispute whether this loan modification application was in fact complete.

On January 8, 2015, Defendant Quality Loan Service Corporation conducted a Trustee's Sale of the subject property at 10:00 a.m. at the San Joaquin County Superior Court. (ECF No. 1 at ¶ 15.) Wells Fargo took title to the subject property on January 15, 2015, and recorded the Trustee's Deed Upon Sale on January 20, 2015. (ECF No. 1 at ¶ 15.)

Plaintiff filed the instant action on April 30, 2015. (ECF No. 1.) After an order from this Court issued March 23, 2016, granting in part and denying in part Defendant's motion to dismiss (ECF No. 20), Plaintiff has viable wrongful foreclosure claims remaining under California Civil Code §§ 2923.6 or 2924.18, California's Homeowner Bill of Rights. The parties are in agreement that Well Fargo thereafter obtained an eviction judgment and Plaintiff moved out of the Property in May 2016. In December 2016, Wells Fargo then rescinded the January 2015 sale; Plaintiff's attorney was informed of the rescission in February 2017, and Plaintiff moved back in. Plaintiff presently resides in the home, and now seeks to enjoin a second foreclosure sale set for September 30, 2019. (ECF No. 60.)

## II. STANDARD OF LAW

A temporary restraining order is an extraordinary remedy. The purpose of a temporary restraining order is to preserve the status quo pending a fuller hearing. See Fed. R. Civ. P. 65. In general, "[t]emporary restraining orders are governed by the same standard applicable to preliminary injunctions." *Aiello v. One West Bank*, No. 2:10-cv-0227- GEB-EFB, 2010 WL 406092 at *1 (E.D. Cal. Jan. 29, 2010) (internal citations omitted); *see also* L.R. 231(a).

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); *see also*

*Costa Mesa City Emps. Ass'n v. City of Costa Mesa*, 209 Cal. App. 4th 298, 305 (2012) ("The purpose of such an order is to preserve the status quo until a final determination following a trial."); *GoTo.com, Inc. v. Walt Disney, Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) ("The status quo ante litem refers not simply to any situation before the filing of a lawsuit, but instead to the last uncontested status which preceded the pending controversy.").

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20. A plaintiff must "make a showing on all four prongs" of the *Winter* test to obtain a preliminary injunction. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). In evaluating a plaintiff's motion for preliminary injunction, a district court may weigh the plaintiff's showings on the *Winter* elements using a sliding-scale approach. *Id.* A stronger showing on the balance of the hardships may support issuing a preliminary injunction even where the plaintiff shows that there are "serious questions on the merits . . . so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, Plaintiff must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply in the plaintiff's favor," in order to succeed in a request for preliminary injunction. *Id.* at 1134–35 (emphasis added).

### III. ANALYSIS

As a preliminary matter, Defendant argues Plaintiff's request should be denied as Plaintiff has waited until the eleventh hour to file the pending application. (ECF No. 65 at 1.) Local Rule 231(b) provides that "the Court will consider whether the applicant could have sought relief by motion for preliminary injunction at an earlier date without the necessity for seeking last-minute relief by motion for temporary restraining order." Should the Court find such a delay, the Court may deny the requested TRO on those grounds alone. L.R. 231(b).

Defendant is correct, of course, that Plaintiff has been aware of the allegations underlying his complaint since well before the September 30, 2019, sale date. But the Court is not convinced that Plaintiff would have had grounds to seek an injunction of the pending foreclosure before he

received the Notice of Trustee Sale, recorded August 29, 2019. Plaintiff's counsel contends that on September 3, Wells Fargo rejected counsel's request to continue the sale date. Therefore, the requested relief could not have been sought—practically speaking—before September 4, 2019. The Court finds Plaintiff's minor delay insubstantial, and therefore declines to deny the requested TRO on the grounds of delay and instead considers the merits of Plaintiff's request.[1]

As for the merits of Plaintiff's request, the Court finds that issuance of a TRO is appropriate at this time because Plaintiff has made a showing on all four prongs of the *Winter* test articulated above. Plaintiff has established a likelihood of irreparable harm to the extent that the trustee's sale of his home is scheduled for September 30, 2019. This harm is imminent as it is neither remote nor speculative, and Defendant does not dispute that the sale of Plaintiff's home would be an irreparable harm. The Court further finds that the balance of hardships tips sharply in Plaintiff's favor because if the sale is not enjoined, Plaintiff will lose his primary residence. The Court acknowledges that Plaintiff has been in default on his loan for some time, and recognizes that further postponement places some hardship on Defendant. The hardship of an additional delay to allow further briefing on the matter, however, pales in comparison to the possibility that Plaintiff could wrongfully lose his home. Similarly, to the extent it is being used to ensure compliance with laws designed to protect the public, a TRO in this case is in the public's interest.

Wells Fargo seems to concede as much, and focuses its opposition on the argument that Plaintiff has failed to establish a likelihood of success on the merits of his complaint. More specifically, Defendant points to its pending Motion for Summary Judgment ("MSJ") (ECF No. 46) in which it argues Plaintiff has failed to establish any genuine issue of material fact that Wells Fargo violated sections 2923.6 and/or 2924.18 of the HBOR.[2]

California Civil Code §§ 2923.6(c) and 2924.18(a)(1) prohibit the recordation of a notice

---

[1] Local Rule 231(c) also outlines several specific documents that a plaintiff must file when seeking a TRO. Plaintiff here has met those requirements, and Defendant does not dispute otherwise.

[2] Wells Fargo's MSJ seeks summary judgment of Plaintiff's wrongful foreclosure claims stemming from Wells Fargo's denial of Plaintiff's March 12, 2014 loan modification application, and his December 5, 2014 loan modification application. Because Plaintiff's TRO only seeks injunctive relief based on the activities surrounding the December application, the Court does not address the March application here.

6

of trustee's sale or the conducting of a trustee's sale while a complete first lien loan modification application is pending. Cal. Civ. Code §§ 2923.6(c), 2924.18(a)(1). Further, § 2923.6(c)(1) requires the servicer to provide a written determination that the borrower is not eligible for modification before proceeding with foreclosure activities. Cal. Civ. Code § 2923.6(c)(1). Without ruling on the merits of the parties' pending motions for summary judgment, and based on the limited briefing before the Court, the Court finds Plaintiff has at least raised serious questions as to the merits of his remaining claims, as further described below.

First, it appears there is a material dispute concerning whether Plaintiff's December 5, 2014 loan modification application was in fact complete, such that the protections of § 2923.6 would be triggered.

Second, to the extent Wells Fargo contends completeness is irrelevant because it was not obligated to review the application pursuant to California Civil Code § 2923.6(g) (ECF No. 46-1 at 12), the Court finds additional material disputes raising serious questions here as well. Specifically, California Civil Code § 2923.6(g) provides, "the mortgage servicer shall not be obligated to evaluate applications from borrowers who have already been evaluated or afforded a fair opportunity to be evaluated for a first lien loan modification prior to January 1, 2013, or who have been evaluated or afforded a fair opportunity to be evaluated consistent with the requirements of this section, unless there has been a material change in the borrower's financial circumstances since the date of the borrower's previous application and that change is documented by the borrower and submitted to the mortgage servicer." Here, Plaintiff contends his 2010 loan modification was cancelled because Wells Fargo believed he never returned the executed agreement. It is thus questionable whether Plaintiff was "afforded a fair opportunity to be evaluated for a first lien loan modification prior to January 1, 2013." Cal. Civ. Code § 2923.6(g). And while Wells Fargo asserts Plaintiff was additionally evaluated for a loan modification and offered such modification in August 2014, Plaintiff claims he did not receive that offer until it was too late to accept it. The Court finds these conflicts in the record are sufficient to raise serious questions going to the merits of Plaintiff's claims under the HBOR. Consequently, Plaintiff's motion is GRANTED.

7

Lastly, no bond shall be required. *See* Fed. R. Civ. Pro. 65(c) (requiring movant to post security); *People of Cal. v. Tahoe Reg'l Planning Agency*, 766 F. 2d 1319, 1325–26 (9th Cir. 1985) (providing that "courts have discretion to excuse the bond requirement"). First, the Court finds Defendant is adequately protected by its security interest in the subject property. *See Jorgensen v. Cassiday*, 320 F. 3d 906, 919 (9th Cir. 2003) ("The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct."); *Ticketmaster L.L.C. v. RMG Techs., Inc.*, 507 F. Supp. 2d 1096, 1116 (C.D. Cal. 2007) ("A bond may not be required, or may be minimal, when the harm to the enjoined party is slight or where the movant has demonstrated a likelihood of success.").

### IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for TRO (ECF No. 60) is GRANTED. Defendant and its agents are hereby enjoined from conducting a trustee's sale, attempting to auction, or otherwise causing to be sold the real property at issue in this action. Plaintiff is ordered to notice and file a motion for preliminary injunction not later than fourteen (14) days from the date of electronic filing of this order. If Plaintiff fails to notice and file such a motion within fourteen (14) days, the TRO shall automatically be lifted. No bond shall be required.

IT IS SO ORDERED.

DATED: September 27, 2019

Troy L. Nunley
United States District Judge