UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN ALVAREZ, | No. 2:15-cv-00943-TLN-DB |
| Plaintiff, | |
| v. | **ORDER** |
| WELLS FARGO BANK, N.A., *et al.*, | |
| Defendants. | |

This matter is before the Court on Plaintiff John Alvarez's ("Plaintiff") Motion for Partial Summary Judgment (ECF Nos. 42–45), Defendant Wells Fargo Bank's ("Defendant") Cross-Motion for Summary Judgment (ECF No. 46), and Plaintiff's Motion for Preliminary Injunction (ECF No. 67). All motions have been fully briefed. (ECF Nos. 48, 50, 51, 52, 71, 76.) For the reasons set forth below, Plaintiff's Motion for Partial Summary Judgment is DENIED, Defendant's Cross-Motion for Summary Judgment is GRANTED, and Plaintiff's Motion for Preliminary Injunction is DENIED.

### I. FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff resides at 7625 Zilli Drive in Tracy, California, the real property at issue in this matter ("the Property"). (ECF No. 47, Statement of Undisputed Facts ("SUF"), at ¶ 1.) On April

---

[1] Unless otherwise noted, the following facts are undisputed.

1

14, 2008, Plaintiff purchased the Property with a mortgage loan from Defendant. (*Id.*) In December 2008, Plaintiff was laid off. (*Id.* at ¶ 4.) Soon after, he notified Defendant of his unemployment and requested mortgage repayment assistance. (*Id..*) As of October 30, 2009, Defendant was the investor in the loan. (*Id.* at ¶ 3.) On August 3, 2010, Defendant approved Plaintiff for a loan modification, which became effective October 1, 2010. (*Id.* at ¶¶ 5, 6.)

Plaintiff continued to struggle financially and experienced several periods of unemployment from 2011 to 2013. (ECF No. 47 at ¶ 7.) During that time, he obtained financial aid from the CalHFA Mortgage Assistance Corporation's Keep Your Home California ("KYHC") unemployment mortgage assistance program in the form of loan payments totaling $26,182.29. (*Id.*) On January 20, 2012, Plaintiff again sought a loan modification from Defendant. (*Id.* at ¶ 10.) On June 7, 2012, Defendant offered Plaintiff a loan modification, which he did not accept because he wanted a principal reduction as well. (*Id.* at ¶¶ 11, 13.) On October 30, 2013, Defendant notified Plaintiff that he was not eligible for a principle reduction since the approved loan modification demonstrated an affordable payment amount, and further, he was ineligible for a principle reduction until all other home preservation program options had been exhausted. (*Id.* at ¶ 14.)

As of November 18, 2013, the loan was in default in the amount of $38,356.34, despite the previous mortgage assistance payments from KYHC. (*Id.* at ¶ 15.) Defendant recorded a notice of default on November 19, 2013. (*Id.*; ECF No. 46-12.) In October 2013, KYHC conditionally approved Plaintiff for an additional $25,000 to be used towards reinstatement of the loan. (*Id.* at ¶ 17.) In December 2013, Defendant informed KYHC that the funds could not be used for the loan because Defendant did not participate in the program. (*Id.* at ¶ 19.) KYHC and Defendant informed Plaintiff that Defendant did not participate in the program. (*Id.* at ¶ 20.) Furthermore, because the loan was past due for more than $25,000, the conditionally granted KYHC funds would not have been sufficient to reinstate the loan and would not have been advanced regardless of Defendant's participation. (*Id.* at ¶ 22.)

On March 12, 2014, Plaintiff attended Defendant's Home Preservation Workshop and submitted a loan modification application. (ECF No. 47 at ¶ 24.) On March 14, 2014, Defendant

sent Plaintiff a letter requesting he provide additional documents and information by April 13, 2014. (*Id.* at ¶ 26.) KYHC's records reflect that on March 13, 2014, it could not re-open Plaintiff's file because he stated he could not afford his home even if the account was brought current. (*Id.* at ¶ 29.) On May 29, 2014, Defendant sent a letter to Plaintiff informing him that it did not receive the requested documentation, was not able to offer assistance options, and would continue the foreclosure process. (*Id.* at ¶ 30.) On July 28, 2014, Plaintiff submitted another request for mortgage assistance. (*Id.* at ¶ 32.) Based on Plaintiff's July submission, Defendant offered Plaintiff a loan modification on August 13, 2014. (*Id.* at ¶ 34.) Defendant sent two letters — dated August 13, 2014, and September 16, 2014 — with the Loan Modification Agreement attached requiring Plaintiff to sign, notarize, and return the documents by October 1, 2014. (ECF Nos. 46-21, 46-22.)

Plaintiff asserts he did not receive the written offer until after October 1, 2014, which was after the deadline for acceptance set forth in the letters. (ECF No. 47 at ¶ 36.) Nevertheless, on October 14, 2014, during a recorded phone call, Plaintiff admitted receiving the loan modification approval in October and stated that he did not know when he would send the documents back. (*Id*. at ¶ 37.) Defendant never received a signed loan modification agreement from Plaintiff. (*Id.* at ¶ 39.) On November 6, 2014, Defendant informed Plaintiff that because he failed to return the signed documents, the loan could not be modified. (*Id.* at ¶ 40.) On December 5, 2014, Plaintiff again submitted documentation in connection with a request for mortgage assistance. (*Id.* at ¶ 42.) Based on the information provided, Defendant determined that Plaintiff had not demonstrated a change in financial circumstances since it had reviewed Plaintiff's July 28, 2014 application. (*Id.* at ¶ 43.) On December 10, 2014, Defendant sent Plaintiff a letter informing him that it could not offer him any mortgage assistance since his application was incomplete. (*Id.* at ¶ 45.) On December 22, 2014, Defendant contacted Plaintiff to discuss whether he had experienced a change in his financial circumstances since the last review, to which he responded he did not know. (*Id.* at ¶ 46.) On January 8, 2015, Defendant proceeded with the Trustee's Sale of the Property. (ECF No. 47 at ¶ 48.)

///

On April 30, 2015, Plaintiff filed his Complaint in this Court seeking injunctive relief, declaratory relief, and damages, all arising from the allegedly wrongful foreclosure of Plaintiff's residence. (ECF No. 1.) On December 13, 2016, Defendant rescinded the Trustee's Deed Upon Sale, and Plaintiff moved back into the home in January 2017.[2] (ECF No. 47 at ¶ 50.) On March 23, 2016, this Court issued an Order denying in part Defendant's Motion to Dismiss (ECF No. 9) and finding Plaintiff had stated viable claims under California's Homeowner Bill of Rights ("HBOR") dual-tracking provisions, specifically California Civil Code §§ 2923.6 or 2924.18. (ECF No. 20.)

On June 15, 2017, the parties each filed a Motion for Summary Judgment, which are presently before the Court. (ECF Nos. 42, 46.) On September 27, 2019, this Court granted a temporary restraining order, enjoining Defendant from conducting a trustee's sale, attempting to auction, or otherwise attempting to sell the Property. (ECF No. 66.) On October 11, 2019, Plaintiff filed a Motion for Preliminary Injunction, which is also presently before the Court. (ECF No. 67.)

## II. STANDARD OF LAW

Summary judgment is appropriate when the moving party demonstrates no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at

---

[2] The Court understands Plaintiff was not out of the home for the entire duration of the sale but was out of possession from on or about July 15, 2016 until January 1, 2017. (ECF No. 46-60 at 18, 21.)

4

324 (internal quotations omitted). Indeed, summary judgment should be entered against a party who does not make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 251–52.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank*, 391 U.S. at 288–89. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any applicable affidavits. Fed. R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982). The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts pleaded before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v.*

*Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987). Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at 587.

**III.   ANALYSIS**

   A.   Plaintiff's Motion for Partial Summary Judgment

In his Motion for Partial Summary Judgment, Plaintiff argues for the first time that Defendant has violated Regulation X, 12 C.F.R. § 1024.41 by failing to adequately respond to Plaintiff's December 5, 2014 loan modification application and therefore has committed the tort of wrongful foreclosure. (ECF No. 43 at 3–4.) Despite not stating this cause of action in his Complaint or seeking the Court's leave to amend to include this novel claim, Plaintiff argues the Court should nevertheless grant his Motion for Partial Summary Judgment. (*Id.* at 7.)

Plaintiff's argument is unavailing. Plaintiff may not assert a new cause of action in a motion for summary judgment that is not pleaded in the operative complaint. *See Navajo Nation v. United States Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008) (holding that raising a new claim in a summary judgment motion is insufficient to present the claim to the district court); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000) (finding district court did not err in granting defendant's summary judgment motion when plaintiffs raised new theory of liability for the first time in opposition). Accordingly, the Court DENIES Plaintiff's Motion for Partial Summary Judgment for violation of Regulation X.

Defendant's Motion for Summary Judgment, which Plaintiff opposes, addresses the claims properly pleaded in Plaintiff's Complaint. To the extent Plaintiff moves for summary judgment of his existing wrongful foreclosure claim, Plaintiff's motion is nonetheless DENIED for the reasons discussed below.

   B.   Defendant's Motion for Summary Judgment

In the instant matter, the parties agree on all material facts as shown by Plaintiff's response to Defendant's Statement of Undisputed Facts (ECF No. 47) but disagree on the legal

implications of those facts. Specifically, the parties agree that Plaintiff applied for a loan modification on March 12, July 28, and December 5, 2014, and that Defendant offered him a modification on August 13, 2014, which Plaintiff did not accept. Based on these facts, Defendant argues the August 13 modification offer cured any violations of HBOR that occurred prior to that date, and it did not have an obligation to review the December 5 application without evidence that Plaintiff had experienced a change in financial circumstances after the August 13 offer. Conversely, Plaintiff argues Defendant had a duty to review the December 5 application and afford him an opportunity to provide any missing documentation, and therefore, its failure to do so constituted a violation of HBOR.

Neither party offers binding legal authority to support their interpretations of the undisputed facts. In its Motion for Summary Judgment, Defendant cites two district court cases in support of its interpretation that the safe harbor provision encompassed in Cal. Civ. Code § 2924.12 precludes its liability in this action. (ECF No. 46-1 at 10–11.) Specifically, Defendant cites to *Boring v. Nationstar Mortgage, LLC*, No. 2:13-cv-01404-GEB-CMK, 2015 WL 9270879 (E.D. Cal. Dec. 21, 2015) ("Pursuant to California Civil Code section 2924.12(c), Nationstar's review of Plaintiff's loan modification application and the resulting denial on January 22, 2014, corrected and remedied any alleged violation of California Civil Code sections 2923.6 or 2923.7.") and *Hendricks v. Wells Fargo Bank, N.A.*, No. CV-15-01299-MWF-JEM, 2016 WL 6603948 (C.D. Cal. June 8, 2016) ("HBOR contains a safe-harbor provision that precludes liability for violations of the statute if those violations are 'corrected and remedied prior to the recordation of a trustee's deed upon sale.'"). Defendant then baldly asserts it did not violate § 2923.6 or § 2924.18[3] in connection with the December 5, 2014 loan modification application. (ECF No. 46-1 at 12–13.)

///

---

[3] California Civil Code § 2924.18 is nearly identical to § 2923.6, but only applies to certain individuals or institutions that, "during its immediately preceding annual reporting period, as established with its primary regulator, foreclosed on 175 or fewer residential real properties, containing no more than four dwelling units, that are located in California." Cal. Civ. Code § 2924.1(b). The Court proceeds with its analysis under § 2923.6, but the outcome is the same under § 2924.18.

7

In opposition, Plaintiff offers no legal authority to support his assertion that Defendant violated Cal. Civ. Code §§ 2923.6 or 2924.18 by failing to consider his December 5, 2014 modification application. More specifically, Plaintiff argues without support that Defendant had an obligation to inform him that he needed to submit information showing a change in financial circumstances before submitting his December 5 application, and that Defendant's later rescission of the Trustee's Sale on January 8, 2015, constitutes an admission of wrongful foreclosure. (ECF No. 48.)

Despite the parties' failure to cite much legal authority, it is clear to the Court based on Defendant's Statement of Undisputed Material Facts (ECF No. 47) that Defendant did not violate HBOR's dual-tracking provisions and therefore is entitled to summary judgment. Under HBOR,

> If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer at least five business days before a scheduled foreclosure sale, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending.

Cal. Civ. Code § 2923.6(c). This provision prohibits lenders from engaging in the practice of dual-tracking, an activity in which a lender participates in loan modification negotiations while at the same time moving forward with a non-judicial foreclosure sale. *Beltz v. Wells Fargo Home Mortg.*, No. 2:15-cv-01731-TLN-CKD, 2017 WL 784910, at *10 (E.D. Cal. Mar. 1, 2017). However, the servicer may record a notice of default or notice of sale, or conduct a trustee's sale, if "[t]he borrower does not accept an offered first lien loan modification within 14 days of the offer." Cal. Civ. Code § 2923.6(c)(2). Furthermore, the statute provides some protection to lenders to prevent a borrower from indefinitely stalling the foreclosure process:

> In order to minimize the risk of borrowers submitting multiple applications for the first loan modifications for purpose of delay, the mortgage servicers shall not be obligated to evaluate applications from borrowers who have been evaluated or afforded a fair opportunity to be evaluated consistent with the requirements of this section, unless there has been a material change in the borrower's

8

> financial circumstances since the date of the borrower's previous application and that change is documented by the borrower and submitted to the mortgage servicer.

Cal. Civ. Code § 2923.6(g). Therefore, if a borrower fails to accept a first lien loan modification, the lender is only obligated to consider a subsequent application if the borrower documents and submits information showing a material change in his or her financial circumstances since the date of the borrower's previous application. *Gilmore v. Wells Fargo Bank, N.A.*, 75 F. Supp. 3d 1255, 1263–64 (N.D. Cal. 2014).

Here, the parties agree Plaintiff submitted loan modification paperwork on March 12, 2014, and Defendant requested additional information in a letter dated March 14, 2014. (ECF No. 47 at ¶¶ 24, 26.) On May 29, 2014, Defendant notified Plaintiff that it had not received the requested additional information and would proceed with the foreclosure. (*Id.* at ¶ 30.) A Notice of Trustee's Sale was then recorded on July 21, 2014. (*Id.* at ¶ 31.) The parties seem to dispute whether the initial loan modification application submitted March 12 was complete. (*Id.* at ¶ 23.) But regardless of whether the March application was complete, the safe harbor provision of Cal. Civ. Code § 2924.12 applies here and saves Defendant from liability. In other words, even if violations occurred in connection with the presumably complete March application, they were later remedied by Defendant's August modification offer. Therefore, either Plaintiff did not submit a completed modification application before Defendant recorded the Notice of Trustee's sale or, if he did, the violation was remedied prior to Defendant's recordation of a trustee's deed upon sale. As such, Defendant did not violate § 2923.6 in connection with the March application and the resulting July Notice of Sale.

Next, the parties also do not dispute that Defendant offered Plaintiff a loan modification on August 13, 2014, based on his complete July 28, 2014 application, but Plaintiff did not receive the modification paperwork until sometime in October 2014, after the acceptance deadline had passed. (ECF No. 47 at ¶¶ 34, 36.) Plaintiff stated in a recorded phone call on October 14, 2014, that he had received the documents, but he did not know when he would send them back. (*Id.* at ¶ 37.) He also said there were "a lot of reasons" why he had not already returned the signed

9

agreement. (*Id.*) On November 6, 2014, Defendant notified Plaintiff that it could not modify the loan since he failed to return the signed loan modification documents. (*Id.* at ¶ 40.)

California Civil Code § 2923.6(c)(2) allows a servicer to record a notice of default or notice of sale, or to conduct a trustee's sale, if "[t]he borrower does not accept an offered first lien loan modification within 14 days of the offer." Here, Plaintiff failed to accept the modification within 14 days despite acknowledging his receipt of the documents. While Plaintiff did receive the documents after the deadline to accept, the 14-day statutory deadline to accept was triggered on the date Plaintiff received the modification. *See Wasjutin v. Countrywide Bank*, No. CV 15-09401-MWF-JC, 2016 WL 7443219, at *2 (C.D. Cal. Jun. 8, 2016) (granting motion to dismiss where plaintiffs received modification paperwork two months after defendant offered the modification but failed to allege defendant proceeded with foreclosure earlier than 14 days after their receipt of the paperwork.)

Although the Court previously found serious questions concerning whether Plaintiff was still able to accept the offer when he received it in October (*see* Order granting TRO, ECF No. 66), on review of the evidence the Court now finds Plaintiff has not raised any dispute of material fact on this issue. More specifically, the October 14 recorded phone call demonstrates Plaintiff did not manifest any intent or desire to accept the modification, and Plaintiff has not shown he was otherwise unable to accept the offer. (ECF No. 47 at ¶ 37.) The Court finds that by failing to act on Defendant's modification within 14 days of his receipt of the documents, Plaintiff tacitly rejected the offer and as a result, Defendant could proceed with the foreclosure sale after its November 6 notification to Plaintiff.

Finally, the parties agree Plaintiff submitted a new modification application on December 5, 2014. (ECF No. 47 at ¶ 42.) Under Cal. Civ. Code § 2923.6(g), in order for Defendant to be compelled to review this application, Plaintiff would have had to show a change in financial circumstances. Based on the new documents Plaintiff submitted, Defendant determined Plaintiff had not demonstrated a change in his financial circumstances at that time. (*Id.* at ¶ 43.) On December 10, 2014, Defendant sent Plaintiff a letter informing him that his application was incomplete. (*Id.* at ¶ 45.) Defendant contacted Plaintiff again on December 22, 2014 and asked if

1 | Plaintiff had experienced a change in his financial circumstances since the last review, to which
2 | Plaintiff responded that he did not know. (*Id.* at ¶ 46.)

To date, Plaintiff has not demonstrated a change in his financial condition, nor does Plaintiff argue he provided Defendant with documentation reflecting such a change. *Ivey v. JP Morgan Chase Bank, N.A.*, No. 16-CV-00610-HSG, 2016 WL 4502587, at *4 (N.D. Cal. Aug. 29, 2016) (*quoting Gilmore v. Wells Fargo Bank N.A.*, 75 F. Supp. 3d 1255, 1264-65 (N.D. Cal. 2014)) ("plaintiff must allege a specific change in financial circumstance that was documented and submitted to the mortgage servicer, rather than providing a 'barebones explanation'."). Accordingly, Defendant did not have an obligation to review Plaintiff's application or halt its foreclosure activities. *See Gilmore v. Wells Fargo Bank, N.A.*, 75 F. Supp. 3d at 1263–64.

Even construing the facts in the light most favorable to the non-moving party, it is clear that Plaintiff has failed to demonstrate a genuine dispute of material fact sufficient to survive Defendant's motion for summary judgment. Since it is undisputed that Plaintiff had previously received and rejected a modification of his loan, Plaintiff's December 5 application needed to demonstrate that he had experienced a material change in his financial circumstances in order to be considered for another modification. Yet, Plaintiff offers little more than bare assertions that Defendant proceeded with the foreclosure sale despite his completed December 5 application and for that reason, the Court finds Defendant did not violate California Civil Code § 2923.6 in connection with Plaintiff's December 2014 modification application — or any other application, as discussed above — and the resulting foreclosure. Accordingly, the Court GRANTS Defendant's Motion for Summary Judgment.

### C. Plaintiff's Motion for Preliminary Injunction

In light of the Court's ruling on Defendant's Motion for Summary Judgment, the Court hereby DENIES Plaintiff's Motion for Preliminary Injunction because Plaintiff has not and cannot demonstrate a likelihood of success on the merits of his claims. (ECF No. 67.)

///

///

///

### IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Summary Judgment is hereby DENIED. Defendant's Motion for Summary Judgment is GRANTED. Plaintiff's Motion for Preliminary Injunction is DENIED. The Clerk of the Court is directed to enter judgment in favor of Defendant and close this case.[4]

IT IS SO ORDERED.

DATED: April 7, 2020

_____
Troy L. Nunley
United States District Judge

---

[4] Pursuant to the Court's Order on Defendant Quality Loan Service Corporation's Nonmonetary Status and Nonparticipation in this Action (ECF No. 8), this Order and resulting Judgment binds Defendant Quality Loan Service Corp. as well.

12